**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAND ROY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., FRANCIS A. DESOUZA, and JOHN THOMPSON,<br><br>Defendants. | Case No. **'23CV2327 BEN BGS**<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Anand Roy ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Illumina, Inc. ("Illumina" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Illumina; and (c) review of other publicly available information concerning Illumina.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Illumina securities between August 18, 2021 and October 16, 2023, inclusive (the "Class Period").   Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Illumina is a genetic and genomic analysis company with a portfolio of integrated sequencing and microarray systems, consumables, and analysis tools designed to accelerate and simplify genetic analysis.   In 2015, Illumina formed GRAIL, Inc. ("GRAIL") as a corporate subsidiary to develop a blood-based cancer

detection test.  After several capital financing rounds, Illumina spun off GRAIL in February 2017 and retained a stake of approximately 20%.

3.     After GRAIL raised $1.9 billion through venture capital and strategic partners, Illumina announced plans to reacquire GRAIL in September 2020 and completed the acquisition on August 18, 2021.  However, on September 6, 2022, the European Union's European Commission ("EC") issued a decision prohibiting the acquisition.

4.     On August 10, 2023, after the market closed, Illumina revealed that the SEC was investigating the Company's statements regarding GRAIL, including "conduct and compensation of certain members of Illumina and GRAIL management.

5.     On this news, the Company's stock price fell $4.64, or 2.5%, to close at $180.48 per share on August 11, 2023

6.     October 17, 2023, Carl Icahn ("Icahn") filed a complaint against current and former directors of Illumina, alleging direct and derivative claims of breaches of fiduciary duty.  The complaint was filed under seal, but according to *Reuters*, Icahn "told the 13D Monitor Active-Passive Investor Summit in New York on Tuesday that the lawsuit pertained to Illumina completing its acquisition of cancer diagnostic test maker Grail."

7.     On this news, the Company's stock price fell $7.42, or 5.6%, to close at $124.45 per share on October 18, 2023.

8.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that certain of the Company's insiders had personal financial motives for acquiring GRAIL; (2) that, contrary to Illumina's attempts to discount Icahn's criticism, Icahn had accurately concluded that insiders' interests did not align with the Company's best interests; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Illumina securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Illumina is incorporated under the laws of Delaware with its principal executive offices located in San Diego, California.  Illumina's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the symbol "ILMN."

16.     Defendant Francis A. deSouza ("deSouza") was the Company's Chief Executive Officer ("CEO") from 2016 to June 11, 2023.

17.     Defendant John Thompson ("Thompson") was the Chairman of the Company's Board of Directors from May 2021 to May 25, 2023 when he was voted off the Board at the 2023 annual stockholder meeting.

18.     Defendants deSouza and Thompson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Illumina is a genetic and genomic analysis company with a portfolio of integrated sequencing and microarray systems, consumables, and analysis tools designed to accelerate and simplify genetic analysis. In 2015, Illumina formed GRAIL as a corporate subsidiary to develop a blood-based cancer detection test. After several capital financing rounds, Illumina spun off GRAIL in February 2017 and retained a stake of approximately 20%.

20. After GRAIL raised $1.9 billion through venture capital and strategic partners, Illumina announced plans to reacquire GRAIL in September 2020.

### Materially False and Misleading
### Statements Issued During the Class Period

21. The Class Period begins on August 18, 2021, when Illumina issued a press release entitled "Illumina Acquires GRAIL to Accelerate Patient Access to Life-Saving Multi-Cancer Early-Detection Test." The press release stated, in relevant part:

> Illumina [. . .] announced today that it has acquired GRAIL, a healthcare company focused on life-saving early detection of multiple

cancers, but will hold GRAIL as a separate company during the European Commission's ongoing regulatory review.

Illumina, the global leader in DNA sequencing, first announced its intention to acquire GRAIL nearly a year ago, reuniting Illumina with GRAIL four years after it was spun off. GRAIL's Galleri blood test detects 50 different cancers before they are symptomatic. Illumina's acquisition of GRAIL will accelerate access and adoption of this life-saving test worldwide.

Regulators in the EU are reviewing the transaction, but a decision is projected after the deal expires. GRAIL has no business in the EU, and the company believes that the European Commission does not have jurisdiction to review the merger as the EU merger thresholds are not met, nor are they met in any EU member state. The General Court of the European Union will hear Illumina's jurisdictional challenge later this year. By holding GRAIL separate while proceedings are ongoing, Illumina is positioned to abide by whatever final decision is reached in these legal processes.

There is no legal impediment to acquiring GRAIL in the US. Illumina is committed to working through the ongoing FTC administrative process, and as always, will abide by whatever outcome is ultimately reached in the US courts.

The reasons to reunite the two companies are compelling:

- The deal will save lives. Cancer kills around 10 million people annually worldwide and 600,000 people in the US alone. Cancers responsible for nearly 71% of cancer deaths have no recommended early detection screening, and most cancers are detected when chances of survival are lower. Illumina feels there is a moral obligation to have the deal decided by a thoughtful and full review by the EU regulators and the US courts. This can only be done if Illumina acquires GRAIL now. Otherwise, the company is locked into a situation where the deal terms will expire before there is a chance for full review; the clock will just run out.

- Right now, the Galleri test is available but costs $950 because it is not covered by insurance. Reuniting the two companies is the fastest way to make the test broadly available and affordable. Illumina's expertise in market development and access has resulted in coverage of genomic testing for over 1 billion people around the world already. This experience will help lead to coverage and reimbursement for the Galleri test.

- GRAIL and Illumina have a long history. Illumina formed GRAIL and spun it out in 2016. GRAIL's first employees were part of Illumina, which still owns 12 percent of the company. GRAIL and Illumina are not competitors—this is a vertical acquisition.

- Based on past experience, when Illumina enters a market, the market expands. When Illumina entered the non-invasive prenatal testing space, prices dropped, reimbursement expanded, the number of providers increased, and more expectant parents had access to testing.

- ***Illumina's acquisition of GRAIL is driven by the belief that this test should be available to as many people as possible as quickly as possible. From fighting the COVID-19 pandemic to matching cancer patients to therapies, Illumina's mandate is to save lives and transform healthcare. The first COVID-19 viral sequence was on an Illumina machine and now genomic surveillance has emerged as a critical tool in the global fight against the pandemic, with over 70 countries now using Illumina platforms for COVID-19 variant tracking***.

"Just as we are now able to screen for early-stage diabetes and high cholesterol, we will soon be able to conduct multi-cancer early detection with a simple blood test in your doctor's office," said [Defendant] deSouza[.] "Since early detection of cancer saves lives, this new genomic test will be nothing short of transformational for human health and the economics of healthcare."

"The merger with Illumina will get the Galleri test to people far faster. We aim to accelerate this process so the test will be available in doctors'

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

offices everywhere, fully reimbursed," said Hans Bishop, Chief Executive Officer of GRAIL. "A one-year acceleration of access to the Galleri test for the US population has the potential to save 10,000 lives over a 9-year period."

"The decision to make the acquisition and hold the companies separate permits the regulatory processes to proceed while safeguarding the life-saving, pro-competitive benefits of this vertical transaction without the deal expiring. We will abide by any outcome ultimately reached by the courts," said Charles Dadswell, General Counsel of Illumina.[1]

22.     On February 10, 2022, Illumina issued a press release announcing the Company's Q4 and Fiscal Year 2021 financial results.  The press release stated, in relevant part:

"We are seeing strength across our business as a growing number of patients around the world are accessing the life-saving benefits of genomics, from oncology therapy selection to genetic disease testing and pathogen surveillance," said [Defendant] deSouza[.] "Opportunities are also expanding across new markets like proteomics, infectious disease and drug discovery. In addition, momentum for GRAIL's groundbreaking multi-cancer early detection blood test continues to accelerate. We are also making great progress on exciting new innovations, like our breakthrough Chemistry X and our Infinity long-read technology, to help clinicians and scientists make discoveries that improve patient care."

23.     On February 18, 2022, Illumina filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended January 2, 2022 (the "2021 10-K").  The 2021 10-K stated, in relevant part:

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

On August 18, 2021, we acquired GRAIL, a healthcare company focused on early detection of multiple cancers. GRAIL's Galleri blood test detects various types of cancers before they are symptomatic. ***We believe our acquisition of GRAIL will accelerate the adoption of next-generation sequencing (NGS) based early multi-cancer detection tests, enhance our position in Clinical Genomics, and increase our directly accessible total addressable market***. The results of operations of GRAIL have been included in our consolidated financial statements from the date of acquisition. The acquisition is subject to ongoing legal proceedings and pending the European Commission's ongoing merger review. GRAIL is currently being held and operated as a separate company, with oversight provided by an appointed, independent monitoring trustee during the European Commission's ongoing merger review.

24.     Appended to the 2021 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant deSouza, attesting that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25.     On May 5, 2022, Illumina issued a press release announcing the Company's Q1 2022 results.  The press release stated, in relevant part:

"Illumina maintained strong momentum in the first quarter, particularly across oncology therapy selection, genetic disease testing, and pathogen surveillance," said [Defendant] deSouza[.] "Our business fundamentals are robust. We saw record total orders and exited the quarter with record total backlog. GRAIL also continued to gain traction and has now entered more than 30 partnerships with health systems, employers, and insurers. We are advancing our innovation roadmap, delivering the sequencing breakthroughs that power genomic research and improve human health."

CLASS ACTION COMPLAINT

10

26.   On September 1, 2022, Illumina issued a press release entitled "Administrative Law Judge Rules in Favor of Illumina in FTC Challenge of GRAIL Deal."  The press release stated, in relevant part:

> Illumina [. . .] today received a favorable decision from the Administrative Law Judge (ALJ) presiding over the Federal Trade Commission's (FTC) challenge of the GRAIL acquisition. In the decision, the ALJ ruled for Illumina and rejected the FTC's position that the deal would adversely affect competition in a putative market for multi-cancer early detection (MCED) tests.
>
> "Reuniting Illumina and GRAIL will transform the detection and treatment of cancer by facilitating widespread, affordable access to GRAIL's life-saving Galleri test. This decision is a step toward making that vision a reality," said [Defendant] deSouza[.] "Too many of us have experienced or witnessed the devastating effects of cancer when it is diagnosed too late. Our mission in bringing Illumina and GRAIL back together is to save many thousands of lives by working to ensure that everyone can find and afford a Galleri test."
>
> "As we've stated from the outset, this transaction is procompetitive, will advance innovation, lower healthcare costs and save lives. We are pleased that, after considering the evidence, the ALJ has reached the same conclusion," said Charles Dadswell, General Counsel of Illumina.
>
> GRAIL was founded by Illumina seven years ago with the goal of developing an early screening test for multiple types of cancer. The transaction will reunite Illumina and GRAIL at a critical time. GRAIL needs Illumina's scale and expertise to overcome significant hurdles to the widespread adoption of Galleri, including obtaining regulatory approval and insurance reimbursement as well as scaling production and distribution of the test.

27.   On September 6, 2022, the EC announced that it had prohibited Illumina's acquisition of GRAIL under the European Union Merger Regulation.  In a press announcing its decision, the EC stated, in relevant part, "[t]he merger would

have stifled innovation, and reduced choice in the emerging market for blood-based early cancer detection tests. Illumina did not offer remedies sufficient to address these concerns."

28.    That same day, the Company issued a press release entitled "Illumina Intends to Appeal European Commission's Decision in GRAIL Deal."  The press release stated, in relevant part:

> Illumina [. . .] today received a decision from the European Commission prohibiting the company's acquisition of GRAIL. The company is reviewing the Commission's order and intends to appeal the decision. The EC decision follows last week's ruling by US Federal Trade Commission judge in favor of Illumina's acquisition of GRAIL.
>
> "We are disappointed with the European Commission's decision prohibiting us from acquiring GRAIL back to Illumina," said Charles Dadswell, General Counsel of Illumina. "Illumina can make GRAIL's life-saving multi-cancer early detection test more available, more affordable, and more accessible – saving lives and lowering healthcare costs. As we continue to believe, this merger is pro-competitive and will accelerate innovation. Last week the Chief Judge of the US Federal Trade Commission issued a decision supporting Illumina acquiring GRAIL."
>
> ***
>
> The merger of Illumina and GRAIL would usher in a transformational phase in the detection and treatment of cancer by facilitating equal and affordable access to the life-saving early cancer detection Galleri test.

29.    On February 17, 2023, Illumina filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the

year ended January 1, 2023 (the "2022 10-K"). The 2022 10-K stated, in relevant part:

> On August 18, 2021, we acquired GRAIL, a healthcare company focused on early detection of multiple cancers. GRAIL's Galleri blood test detects various types of cancers before they are symptomatic. ***We believe our acquisition of GRAIL will accelerate the adoption of next-generation sequencing (NGS) based early multi-cancer detection tests, enhance our position in Clinical Genomics, and increase our directly accessible total addressable market***. The acquisition is subject to ongoing legal proceedings. Currently, GRAIL must be held and operated separately and independently from Illumina pursuant to interim measures ordered by the European Commission, which prohibited our acquisition of GRAIL on September 6, 2022.

30.     Appended to the 2022 10-K as an exhibit was a signed certification pursuant to SOX by Defendant deSouza, attesting that "[t]he information contained in the [2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.     On March 13, 2023 and March 15, 2023, Icahn, who was the beneficial owner of approximately 1.4% of the outstanding shares of the Company as of February 17, 2023 sent open letters to Illumina shareholders which, among other things, nominated three prospective board members and criticized Illumina's acquisition of GRAIL.

32.     On March 20, 2023, the Company issued a press release entitled "Illumina Underscores Commitment to Shareholder Value and Responds to Carl Icahn's Statements." The press release stated, in relevant part:

Illumina [. . .] today issued the following response to Carl Icahn's public statements and letters to Illumina's shareholders dated March 13 and March 15, 2023:

Illumina's innovation engine delivers shareholder value to the core business

Illumina has a successful long-term track record of innovating to fundamentally advance the understanding of biology and improve human health. Illumina is the only profitable, pure-play genomics tools company in existence. This commitment to excellence and successful execution includes profitable, double-digit revenue growth over the past decade. By adding Icahn's director nominees, who lack experience in, and knowledge of, the business and industry, Illumina risks jeopardizing the long-term success of its core franchise which is primed to achieve rich, long-term shareholder returns over the next several years and beyond.

***

Illumina is moving as quickly as possible to work through the legal and regulatory processes to maximize value for shareholders with respect to GRAIL, including defining the conditions and options of a potential divestiture. Illumina has challenged the European Commission's (EC) jurisdiction to review the GRAIL acquisition. The final decision is expected in late 2023 or early 2024. Winning a jurisdictional appeal eliminates any EC fine and gives the greatest optionality for Illumina to maximize value for shareholders. If Illumina loses the EU jurisdictional appeal, the company will follow the terms of the final divestiture order, expeditiously and in a manner that is in the best interests of its shareholders. The Board's ongoing management of the GRAIL process is carefully considered and informed by thorough analysis.

Icahn does not contest that GRAIL represents a valuable asset to both Illumina's shareholders and global human health. Indeed, on CNBC on March 14th, he referred to GRAIL as Illumina's "best equipment." He also acknowledges he doesn't understand the regulatory process and has not offered any new ideas for a more rapid resolution for GRAIL. As for the EU regulatory process, he admits he's "not a lawyer" and that

"[he hasn't] really studied it." Icahn has no ability to accelerate the legal and regulatory processes and neither do his nominees.

33.     On April 24, 2023, a post on *Nongaap Investing* entitled "Illumina: Malignant Governance" posited that Illumina insiders reaped a financial windfall "in excess of $500 million" from the divestiture and reacquisition of GRAIL. Tracing the changes in Illumina's equity stake of GRAIL, the author alleged that "up to 70 million Grail shares went to insiders, right out-of-the-gate."

34.     On April 28, 2023, Icahn issued an open letter to Illumina shareholders.  Therein, he drew attention to the "Malignant Governance" blog post and called for Illumina to conduct an unbiased investigation into the issues, stating:

> Additionally, we read an interesting piece recently on Illumina, entitled "Malignant Governance," which asks the question that has been on the mind of virtually every long term shareholder with whom we have spoken: "***How much money did Illumina insiders (past and present) make from splitting-off and subsequently re-acquiring Grail?***" We have no idea if the allegations are true. However, based on what we <u>do</u> know of the past actions and lack of transparency exhibited by Illumina CEO Francis deSouza and the incumbent directors, we would not be surprised at all if some or all of the assertions turned out to be accurate. <u>We therefore implore the board to bring in an outside – and demonstrably independent – law firm and forensic accounting team to investigate and address these questions publicly, with enough time prior to the upcoming annual meeting to allow shareholders to take the results into account when casting their votes for directors.</u> We believe that an unbiased investigation into these murky issues is necessary and appropriate, given the fact that the director election will in effect be a referendum on the entire GRAIL fiasco. Unfortunately, we believe that we will see pigs fly before we see such an investigation conducted by this board.

(Emphasis in original.)

35. On May 1, 2023, Illumina issued a press release and shareholder letter in connection with the annual stockholder meeting to be held on May 25, 2023. Therein, the Company stated:

### 2016 GRAIL spin-out from Illumina

An inflammatory blog post, repeated by Icahn, incorrectly suggested that Illumina spun out and reacquired GRAIL in order to enrich Illumina's directors and executives. Icahn himself, however, admits "We have no idea if the allegations are true."

The allegations are completely false.

The facts are as follows:

- ***None of Illumina's directors involved in either the decision to sign or the decision to close the GRAIL acquisition*** – including our former CEO and Executive Chairman Jay Flatley, our current CEO Francis deSouza and each of Illumina's current directors – has ever held any equity interests in GRAIL.

- ***At the time of Illumina's various investment rounds in GRAIL, no individuals at Illumina were investors in GRAIL***. Illumina's employees, executive officers and Board members were not permitted to participate in GRAIL investment rounds and did not otherwise receive any GRAIL equity.

- Illumina, Inc. was the founder of GRAIL and individuals employed by Illumina moved to GRAIL as part of the spin-out in 2016. Those who moved to GRAIL terminated their relationship with Illumina at the time of transition and directors and employees who remained at Illumina could not invest in GRAIL nor did they receive any GRAIL equity.

- ***No executive officers of Illumina held GRAIL shares at the signing or closing of the GRAIL acquisition***, other than Alex Aravanis, who Illumina had hired from GRAIL, and Mostafa Ronaghi, Illumina's former CTO, who received GRAIL shares upon joining GRAIL's board in May 2020. The economic interests and relationships of these individuals with GRAIL were fully disclosed to, and known by, Illumina and its Board,

CLASS ACTION COMPLAINT
16

and, consistent with good corporate governance practices, both were recused from any decisions to sign and close the GRAIL acquisition.

36.     On May 18, 2023, Illumina issued a press release in advance of the 2023 stockholder meeting, which contained a letter from Defendant Thompson, stating in relevant part:

On conflicts of interest, there is an important question I would like to put to bed: "Did any Illumina directors have a financial interest in GRAIL at the time of the acquisition?" This question is not a matter of interpretation or explanation. The answer is simply no. ***As we have said before, no director who oversaw any part of the GRAIL transaction has ever owned any equity interest in GRAIL – that includes Jay Flatley, Francis deSouza, myself, and any member of the Board now or at the time of acquisition.*** In addition, no executive officers of Illumina held GRAIL shares at the signing or closing of the GRAIL acquisition (including indirect ownership interests such as through trusts, LP or GP stakes in investment vehicles, or through derivative securities), other than Alex Aravanis, who Illumina had hired from GRAIL, and Mostafa Ronaghi, Illumina's former CTO, who received GRAIL shares upon joining GRAIL's Board in May 2020. The economic interests and relationships of these individuals with GRAIL were fully disclosed to, and known by, Illumina and its Board, and, consistent with good corporate governance practices, both were recused from any decisions to sign and close the GRAIL acquisition. In addition, Illumina's Board engaged Goldman Sachs as its financial advisor in connection with the GRAIL acquisition and Goldman, acting exclusively for Illumina, delivered a customary fairness opinion to Illumina's Board immediately prior to Illumina entering into the GRAIL acquisition agreement.

37.     The above statements identified in ¶¶ 21-26, 28-30, 32, and 35-36 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that certain of the Company's insiders

had personal financial motives for acquiring GRAIL; (2) that, contrary to Illumina's attempts to discount Icahn's criticism, Icahn had accurately concluded that insiders' interests did not align with the Company's best interests; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis

### Disclosures at the End of the Class Period

38.     On August 10, 2023, after the market closed, Illumina revealed that the SEC was investigating the Company's statement regarding GRAIL. Specifically, in its Form 10-Q for the period ended July 2, 2023, Illumina stated:

> In July 2023, we were informed that the staff of the SEC was conducting an investigation relating to Illumina and was requesting documents and communications primarily related to Illumina's acquisition of GRAIL and certain statements and disclosures concerning GRAIL, its products and its acquisition, and related to the conduct and compensation of certain members of Illumina and GRAIL management, among other things. Illumina is cooperating with the SEC in this investigation.

39.     On this news, the Company's stock price fell $4.64, or 2.5%, to close at $180.48 per share on August 11, 2023.

40.     On October 17, 2023, Icahn filed a complaint against current and former directors of Illumina, alleging direct and derivative claims of breaches of fiduciary duty.  The complaint was filed under seal, but according to *Reuters*, Icahn "told the 13D Monitor Active-Passive Investor Summit in New York on Tuesday

that the lawsuit pertained to Illumina completing its acquisition of cancer diagnostic test maker Grail."

41.     On this news, the Company's stock price fell $7.42, or 5.6%, to close at $124.45 per share on October 18, 2023.

42.     Then, on October 20, 2023, after the market closed, Icahn filed a public version of his complaint against Illumina's insiders, alleging that "[t]he conflicted directors, poisoned by their personal stake in the matter, cannot be entrusted" with "matters of vital importance to Illumina."  The complaint states that "Illumina's extraordinary decision to close the GRAIL Acquisition has long given rise to questions regarding whether Illumina's directors and officers had personal financial motives for closing the deal."  The next sentence of the same paragraph is redacted from the public version of the complaint.  The complaint also refers to other "Undisclosed Matters," which are also redacted from public view.  However, the complaint alleges that Illumina's insiders "Entrench[ed] Themselves on the Board Through Misleading Disclosures and Other Machinations."

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Illumina securities between August 18, 2021 and October 16, 2023, inclusive, and who were damaged thereby

(the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Illumina's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Illumina shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Illumina or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

CLASS ACTION COMPLAINT
20

47.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

        b.    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Illumina; and

        c.    to what extent the members of the Class have sustained damages and the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

49.    The market for Illumina's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading

statements, and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Illumina's securities relying upon the integrity of the market price of the Company's securities and market information relating to Illumina, and have been damaged thereby.

50. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Illumina's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Illumina's business, operations, and prospects as alleged herein.

51. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Illumina's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and

prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

52.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

53.    During the Class Period, Plaintiff and the Class purchased Illumina's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

54.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal

securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Illumina, their control over, and/or receipt and/or modification of Illumina's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Illumina, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

55.     The market for Illumina's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Illumina's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Illumina's securities and market information relating to Illumina, and have been damaged thereby.

56.     During the Class Period, the artificial inflation of Illumina's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about

Illumina's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Illumina and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

57.  At all relevant times, the market for Illumina's securities was an efficient market for the following reasons, among others:

a.  Illumina shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b.  As a regulated issuer, Illumina filed periodic public reports with the SEC and/or the NASDAQ;

c.  Illumina regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the

financial press and other similar reporting services; and/or

d.    Illumina was followed by securities analysts employed by

brokerage firms who wrote reports about the Company, and

these reports were distributed to the sales force and certain

customers of their respective brokerage firms. Each of these

reports was publicly available and entered the public

marketplace.

58.    As a result of the foregoing, the market for Illumina's securities promptly digested current information regarding Illumina from all publicly available sources and reflected such information in Illumina's share price.  Under these circumstances, all purchasers of Illumina's securities during the Class Period suffered similar injury through their purchase of Illumina's securities at artificially inflated prices and a presumption of reliance applies.

59.    Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that

Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

60.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of Illumina who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Illumina's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

63.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

market prices for Illumina's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Illumina's financial well-being and prospects, as specified herein.

65.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Illumina's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Illumina and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

66.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

67.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Illumina's financial well-being and prospects from the investing public

and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

68. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Illumina's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Illumina's securities during the Class Period at artificially high prices and were damaged thereby.

69. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be

true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Illumina was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Illumina securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

70.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     Individual Defendants acted as controlling persons of Illumina within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in,

and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75. As set forth above, Illumina and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members

of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 21, 2023          **POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

---

CLASS ACTION COMPLAINT
34

1
2
3
4
5
6
7
8
9
10

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
Emma Gilmore
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
ahood@pomlaw.com

11
12
13
14
15
16
17

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

18

*Attorneys for Plaintiff*

19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT
35